UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| AMY G., <br><br>    Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of the Social Security Administration, <br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 1:22-cv-00161 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Amy G.[1] brought this action for judicial review of the denial of her application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge ("ALJ") who addressed Ms. G.'s application determined she did not qualify as disabled.[3] Ms. G. argues the ALJ erred by failing to properly evaluate her subjective symptoms and by failing to adequately develop the record.[4] Because the record shows the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by her first name and last initial only.

[2] (*See* Compl., Doc. No. 5); *see also* 42 U.S.C. §§ 401–434, 1381–1385.

[3] (Certified Tr. of Admin. R. ("Tr.") 961–72, Doc. No. 10.)

[4] (*See* Opening Br. 1, 4–9, Doc. No. 13.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 7.)

1

STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

---

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[9] *Id.* at 1154 (internal quotation marks omitted).

[10] *Id.* (internal quotation marks omitted).

[11] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[15]

---

[13] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[16] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Ms. G. applied for disability insurance benefits and supplemental security income on September 21, 2018, alleging disability beginning on July 15, 2018.[18] After an administrative hearing, the ALJ issued a decision denying benefits in 2020,[19] which was reversed and remanded by the district court.[20] On remand, the ALJ held a second hearing[21] and issued a decision on September 22, 2022, finding Ms. G. not disabled and denying benefits.[22]

In the 2022 decision, at step two of the sequential evaluation, the ALJ found Ms. G. had the severe impairments of bipolar II disorder, anxiety disorder, and substance use disorder.[23] At step three, the ALJ found these impairments did not meet or medically equal an impairment

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 29.)

[19] (*See* Tr. 29–38.)

[20] (*See* Tr. 1021.)

[21] (*See* Tr. 981–1007.)

[22] (Tr. 961–72.)

[23] (Tr. 963.) The ALJ found post-traumatic stress disorder was not a medically determinable impairment for Ms. G.'s claim. (Tr. 964.) He also indicated medical records of moderate depression were "notable," without stating whether this condition was a medically determinable, nonsevere impairment. (*Id.*) Because Ms. G. does not challenge the ALJ's step two findings, this order does not further address them.

4

listing.[24]  The ALJ then found Ms. G. had the residual functional capacity ("RFC")[25] to perform a full range of work at all exertional levels, with certain nonexertional limitations: she could understand, remember, and carry out only simple, routine tasks; she could have occasional interaction with supervisors and coworkers, and never directly interact with the public; and she could adjust appropriately to occasional changes in routine workplace settings.[26]  After considering the testimony of a vocational expert, the ALJ found Ms. G. could not do past work but could perform other jobs existing in significant numbers in the national economy.[27]  Therefore, the ALJ found Ms. G. not disabled and denied her claims.[28]

Ms. G. did not request review by the Appeals Council, making the ALJ's decision final for purposes of judicial review.[29]

---

[24] (Tr. 964.)

[25] A claimant's RFC is the most she can do in a work setting considering her limitations.  *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).  In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."  SSR 96-8p, 1996 SSR LEXIS 5, at *5.  The ALJ considers all relevant medical and other evidence in the record.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

[26] (Tr. 966.)

[27] (Tr. 970–71.)

[28] (Tr. 972.)

[29] *See* 20 C.F.R. §§ 404.984(d). 416.1484(d).

ANALYSIS

Ms. G. raises two challenges to the ALJ's RFC determination. First, she argues the ALJ failed to properly evaluate her subjective symptoms.[30] Second, she argues the ALJ failed to adequately develop the record with updated medical opinion evidence.[31] Ms. G. contends these errors resulted in an RFC finding unsupported by substantial evidence.[32]

As explained below, Ms. G. has demonstrated no error in the ALJ's evaluation of her subjective symptoms or in his treatment of medical opinion evidence. Accordingly, the Commissioner's decision is affirmed.

**A. Subjective Symptoms**

An ALJ must evaluate subjective symptoms using a two-step process. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[33] Second, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."[34] In doing so, the ALJ must "examine the entire case record."[35] The ALJ considers factors such as: the claimant's daily activities; the duration, frequency, and intensity of

---

[30] (Opening Br. 1, 4–7, Doc. No. 13.)

[31] (*Id.* at 1, 7–9.)

[32] (*Id.* at 4–9.)

[33] SSR 16-3p, 2016 SSR LEXIS 4, at *3 (Oct. 25, 2017); *see also* 20 C.F.R. §§ 404.1529(b), 416.929(b).

[34] SSR 16-3p, 2016 SSR LEXIS 4, at *4; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

[35] SSR 16-3p, 2016 SSR LEXIS 4, at *9–10; *see also* 20 C.F.R. §§ 404.1529(c), 416.929(c).

symptoms; medication taken and whether it alleviates the symptoms; and other treatment or measures used to relieve the symptoms.[36] The ALJ also considers whether there are inconsistencies between the claimant's statements and the record or inconsistencies in the evidence.[37]

The record shows the ALJ applied this two-step process in evaluating Ms. G.'s reported symptoms. The ALJ gave a detailed summary of Ms. G.'s testimony regarding her symptoms, including her statements that:

- she cycled through moods ranging from depression to mania;
- she experienced both hypomanic symptoms (where she was aware and in touch with reality) and "full-blown" manic symptoms (where she could not make decisions and did not remember familiar people);
- during manic phases, she could not stay on task and could not make plans, which happened nearly every day;
- she avoided going anywhere due to fear that she would experience full-blown mania;
- she was concerned that mania would inhibit her concentration and work attendance;
- she needed her parents' help managing her medications and accompanying her when she ventured away from home; and
- she rode a bike but struggled to go out in public.[38]

---

[36] SSR 16-3p, 2016 SSR LEXIS 4, at *18–19; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[37] 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4).

[38] (Tr. 967–68.)

7

The ALJ found Ms. G.'s medically determinable impairments could reasonably be expected to cause some of the alleged symptoms.[39] The ALJ noted there was objective medical evidence to support many of Ms. G.'s mental health allegations, including diagnoses of bipolar disorder, anxiety disorder, and cannabis abuse; a 2018 hospitalization for mania and psychosis; and a 2020 "full-blown manic attack."[40] Based on the objective medical evidence, clinical observations regarding reduced concentration/focus and irritability, and Ms. G.'s testimony, the ALJ concluded her mental health symptoms warranted the nonexertional limitations included in the RFC determination.[41]

However, the ALJ found Ms. G.'s statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.[42] First, the ALJ noted Ms. G.'s testimony that she needed someone to accompany her when she left home conflicted with her admission that she had traveled cross-country to visit her siblings and was engaging in vocational rehabilitation, as well as her reports to providers that she could drive to familiar places within about twenty minutes and had applied for a public transportation pass.[43] Second, the ALJ noted that although Ms. G. testified she had a medical marijuana card and used marijuana daily to help modulate her symptoms, the only mention of medical marijuana in her medical records was from 2017, and she was subsequently

---

[39] (Tr. 968.)

[40] (Tr. 967–68.)

[41] (Tr. 968.)

[42] (*Id.*)

[43] (*Id.*)

diagnosed with cannabis use disorder.[44]  The ALJ found "[d]iagnosing a substance use disorder is seemingly incongruent with having a prescription for the substance being used."[45]  Finally, the ALJ noted that although Ms. G. appeared to rely on the severity of her "full-blown" manic episodes to support her claim that her bipolar disorder was disabling, there was only evidence of two such episodes—in 2018 and 2020.[46]  The ALJ found "[t]his infrequency of full-blown manic episodes fails to persuade me that her bipolar disorder is as disabling as she believes it to be."[47]

In sum, the ALJ applied the two-step process for evaluating subjective symptoms and supported his findings for each step with reference to evidence in the record.  Nevertheless, Ms. G. argues the ALJ relied on "faulty bases" in evaluating her symptoms.[48]  As explained below, none of Ms. G.'s arguments are persuasive.

First, Ms. G. argues the ALJ improperly concluded that only full-blown mania was relevant to the assessment of her claims and failed to consider the effects of her hypomania—including her testimony that she couldn't make plans, stay punctual, or stay on task when hypomanic, which happened nearly every day.[49]  This argument is belied by the record.  The ALJ expressly referenced Ms. G.'s testimony that she experienced hypomanic symptoms,[50] and he summarized her testimony as follows: "during manic phases she cannot stay on task and

---

[44] (Tr. 967–69.)

[45] (Tr. 969.)

[46] (*Id.*)

[47] (*Id.*)

[48] (Opening Br. 6, Doc. No. 13.)

[49] (*Id.* at 5–6 (citing Tr. 994).)

[50] (Tr. 967.)

cannot make plans, reporting that this happens nearly every day."[51] Thus, the ALJ discussed the precise testimony regarding hypomania that Ms. G. alleges he failed to consider. The fact that the ALJ also noted she experienced only two "full-blown" manic episodes does not mean he failed to consider her symptoms of hypomania—the record plainly shows he did consider them. Further, the ALJ included limitations related to reduced concentration and focus in Ms. G.'s RFC, based on clinical observations consistent with her testimony.[52] Under these circumstances, Ms. G. has demonstrated no error in the ALJ's evaluation of her reported manic symptoms.

Second, Ms. G. argues the ALJ's discussion of conflicting evidence regarding medical approval for marijuana was improper.[53] In 2016, the agency revised its policies to eliminate the term "credibility" and to clarify that "subjective symptom evaluation is not an examination of an individual's character."[54] Ms. G. suggests the ALJ's discussion of her marijuana use was an improper evaluation of her credibility and character, contrary to these revised policies.[55] However, the ALJ did not indicate he was assessing her credibility or character in this discussion. The ALJ merely noted that Ms. G.'s testimony that she was using medical marijuana with a prescription was not supported by medical records after 2017 and was inconsistent with a 2022 diagnosis of cannabis use disorder.[56] The applicable regulations require the ALJ to consider inconsistencies between the claimant's testimony and other evidence in the record in

---

[51] (Tr. 968.)

[52] (*See id.*)

[53] (*See* Opening Br. 6, Doc. No. 13.)

[54] SSR 16-3p, 2016 SSR LEXIS 4, at *1.

[55] (*See* Opening Br. 6, Doc. No. 13.)

[56] (*See* Tr. 968–69.)

evaluating subjective symptoms.[57] The ALJ did not err in noting this inconsistency, and nothing in the record suggests he engaged in an improper credibility evaluation.

      Third, Ms. G. argues the ALJ erred in pointing out that she was able to travel to visit siblings and that she was engaging in vocational rehabilitation with the goal of returning to part-time work.[58] Ms. G. argues these activities do not indicate an ability to work fulltime on a regular and continuing basis, and she contends her desire to work parttime is irrelevant.[59] However, the ALJ discussed Ms. G.'s travel and vocational rehabilitation in relation to her testimony that she needed someone to accompany her whenever she left home.[60] The ALJ found her testimony on this issue "not entirely compatible" with activities such as traveling cross-country, driving short trips, and engaging in vocational rehabilitation.[61] The applicable regulations require the ALJ to consider evidence of daily activities in evaluating the claimant's symptoms and limitations,[62] as well as any conflicts between the claimant's statements and other evidence in the record.[63] Thus, the ALJ properly considered evidence of these activities in evaluating Ms. G.'s testimony about her symptoms and limitations.

---

[57] *See* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

[58] (*See* Opening Br. 6, Doc. No. 13; *see also* Tr. 968.)

[59] (*See* Opening Br. 6, Doc. No. 13.)

[60] (*See* Tr. 968.)

[61] (*Id.*)

[62] *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[63] *See id.* §§ 404.1529(c)(4), 416.929(c)(4).

Finally, Ms. G. argues the ALJ erred by failing to include a limitation related to pace in her RFC.[64] She again points to her testimony that hypomania limited her ability to stay punctual and stay on task.[65] But as noted above, the ALJ expressly referenced this testimony in his decision and relied on it in including nonexertional limitations in her RFC, such as limiting her to only simple, routine tasks and occasional changes in routine workplace settings.[66] Thus, the ALJ considered and accounted for Ms. G.'s testimony on this issue in assessing her RFC, and Ms. G. has not demonstrated the ALJ erred in declining to include additional limitations.[67]

For all these reasons, the ALJ did not err in his evaluation of Ms. G.'s subjective symptoms.

### B. Medical Opinion Evidence and Development of the Record

Ms. G. next argues the ALJ erred in relying on stale medical opinion evidence and failing to adequately develop the record with updated medical opinions.[68] Ms. G. suggests that because the ALJ did not rely on updated medical opinion evidence in determining her RFC, the ALJ's RFC findings were unsupported by substantial evidence.[69]

---

[64] (*See* Opening Br. 7, Doc. No. 13.)

[65] (*See id.* (citing Tr. 994).)

[66] (*See* Tr. 966–68.) The ALJ also noted Ms. G.'s RFC limited her to "simple, unskilled occupations." (Tr. 970.)

[67] *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (finding an ALJ adequately accounted for moderate limitations in concentration, persistence, and pace in limiting the claimant to unskilled work).

[68] (*See* Opening Br. 1, 7–9, Doc. No. 13.)

[69] (*Id.* at 7.)

An ALJ is required to assess the persuasiveness of medical opinion evidence in assessing RFC, including explaining how he considers the supportability and consistency of medical opinions.[70] However, the Tenth Circuit has repeatedly held "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[71] "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[72] This is because "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities."[73]

In assessing Ms. G.'s RFC, the ALJ relied on prior administrative medical findings from state agency psychological consultants in January and April 2019, who opined Ms. G. could understand, remember, and follow simple routine tasks on a sustained basis, and could engage in appropriate social interactions with coworkers, supervisors, and the general public.[74] The ALJ found these opinions persuasive, noting they were supported by citations to medical evidence showing reduced concentration and focus.[75] The ALJ also considered medical opinions provided

---

[70] 20 C.F.R. §§ 404.1520c(b)(2), (c), 416.920c(b)(2), (c).

[71] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012); *see also Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 628 (10th Cir. 2020) (unpublished); *Berumen v. Colvin*, 640 F. App'x 763, 766 (10th Cir. 2016) (unpublished); *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (unpublished).

[72] *Chapo*, 682 F.3d at 1288 (alteration in original) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).

[73] *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished).

[74] (*See* Tr. 969 (citing Tr. 75–98, 103–130).)

[75] (*Id.*)

13

by Ms. G.'s treating physician in September and November 2018.[76] The ALJ found the physician's conclusion that Ms. G. was "medically disabled" unpersuasive, noting it was given without explanation or citation to supporting medical records.[77] The ALJ found the physician's assessment of "insignificant," "moderate," and "marked" limitations in various abilities were partially supported, noting there were clinical findings both supporting and contradicting this assessment.[78] Finally, the ALJ considered an opinion provided by a medical expert in June 2022.[79] This expert reviewed the record at the ALJ's request and opined Ms. G. had no limitations in any area of mental functioning.[80] The ALJ found this opinion unpersuasive because it was inconsistent with every other opinion and with Ms. G.'s testimony regarding her limitations.[81]

Ms. G. argues the medical opinions from 2018 and 2019 were stale because they were offered before her second manic episode in 2020, and before a two-month period of abstention from marijuana in the fall of 2019.[82] However, these opinions were offered after Ms. G.'s first manic episode in 2018, for which she was hospitalized.[83] She does not explain how her second manic episode (which did not require hospitalization) rendered these opinions stale, or what

---

[76] (*See id.* (citing Tr. 468–74, 479).)

[77] (*Id.*)

[78] (*Id.*)

[79] (Tr. 969–70 (citing Tr. 1210).)

[80] (Tr. 1208–14.)

[81] (Tr. 970.)

[82] (*See* Opening Br. 8, Doc. No. 13.)

[83] (*See* Tr. 967 (noting Ms. G. was hospitalized during the summer of 2018 for mania and psychoses).)

additional limitations should have been assessed based on this episode. Ms. G. also does not explain the relevance of a two-month period of marijuana abstention to the medical opinions or the RFC assessment. Under these circumstances, Ms. G. has not shown these medical opinions were stale or that the ALJ erred in relying on them.[84]

Moreover, contrary to Ms. G.'s argument that the ALJ failed to develop the record, the ALJ requested and obtained updated medical opinion evidence in June 2022, before the second administrative hearing.[85] The fact that the ALJ found this updated opinion unpersuasive does not render his RFC determination unsupported. The record shows the ALJ based his RFC assessment on both the earlier medical opinions and on other evidence from the entire relevant time period—including subsequent medical records and Ms. G.'s testimony.[86] The evidence cited in the decision constitutes substantial evidence supporting the ALJ's findings, and the ALJ was not required to rely on an updated medical opinion in assessing Ms. G.'s RFC.

---

[84] *See Trujillo v. Comm'r, Soc. Sec. Admin.*, 818 F. App'x 835, 840–41 (10th Cir. 2020) (unpublished) (finding no error in an ALJ's reliance on an allegedly stale opinion, where the plaintiff failed to explain how later treatment records materially differed from medical evidence predating the opinion, and failed to develop any argument that the opinion was contradicted by more recent evidence).

[85] (*See* Tr. 1208–14.)

[86] (*See* Tr. 966–70.)

## CONCLUSION

Where Ms. G. has demonstrated no error in the ALJ's treatment of subjective symptoms or medical opinion evidence, nor shown the ALJ failed to adequately develop the record, the Commissioner's decision is affirmed.

DATED this 22nd day of January, 2024.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge